IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                             Plaintiff,<br><br>         vs.<br><br>AREND MATHIJSSEN,<br><br>                             Defendant. | **8:20CR116**<br><br>**MEMORANDUM AND ORDER** |

This matter is before the Court on Defendant's Motion to Suppress (Filing No. 61). The parties appeared for a hearing on this matter on November 23, 2021. For the reasons stated below, the Motion will be denied.

**I.    BACKGROUND**

Defendant is charged with one count of possession with intent to distribute five grams or more of actual methamphetamine. Filing No. 1. Defendant moves to suppress the physical evidence seized a traffic stop and search of the Defendant's person and vehicle on or about October 21, 2019. Defendant also moved to suppress statements he made that resulted from the traffic stop and Defendant's subsequent detention.

The parties largely agree on the basic facts relevant to this Motion. On October 21, 2019, at approximately 2:24 a.m., Defendant was driving a white Dodge Durango with Colorado license plates on NW Radial Highway heading southeast from Military Avenue toward Charles Street in Omaha, Nebraska. Omaha Police Department Officers Jesse Orsi and Matthew Slingwine observed the Durango make a lane change without signaling and initiated a traffic stop.

Once stopped, the officers approached the Durango and spoke with Defendant. Officers testified that Defendant had bloodshot eyes and appeared to be under the

1

influence of drugs or alcohol. They also testified that Defendant appeared nervous. Officer Orsi's body camera captured the interaction between the officers and Defendant. (*See* Filing No. 66, Hearing Exhibit ("Ex.") 1.) The video shows that after Defendant had difficulty presenting identification, Officers asked him to exit the Durango and follow them to the police cruiser. Ex. 1 at 2:25. Officer Orsi later told another officer that he asked Defendant to exit the Durango because Orsi thought it was "for sure a DUI." Ex. 1 at 25:03.

Defendant complied with the officers' request and conversed cordially with the officers as the officers and Defendant approached the cruiser. After reaching the cruiser, one officer asked Defendant if he had anything to drink. Defendant denied that he had been drinking and explained that he had just dropped off a friend. Ex. 1 at 2:55. As Defendant spoke with officers, he can be seen briefly reaching into his pockets. Ex. 1 at 3:00. Officer Orsi instructed Defendant to keep his hands out of his pockets and immediately asked if Defendant had anything on him that officers should be aware of. Ex. 1 at 3:01. Defendant said no. Officer Orsi then asked, "Care if I check you to be sure?" Ex. 1 at 3:03. Defendant's response is not fully audible, but Defendant agrees that he said "yeah" or something similar. *See* Filing No. 68.

The next few moments are difficult to discern from the video. During the search, officers testified they located a small baggie in Defendant's pocket that appeared to contain methamphetamine. Officers placed the baggie on the hood of the cruiser as one officer attempted to place Defendant in handcuffs. Defendant then immediately grabbed the baggie off the hood of the cruiser and put the baggie in his mouth. Officers wrestled with Defendants for several moments and attempted to get Defendant to spit the baggie

2

out. Defendant did not spit out the baggie and appeared to swallow it. On the video, one of the officers can be heard saying Defendant "swallowed it."

Defendant was taken to the University of Nebraska Medical Center after swallowing the bag of suspected methamphetamine. Medical personnel were able to remove the baggie and notified officers that they located other evidence while treating Defendant.

## II. DISCUSSION

### A. *Justification for Traffic Stop*

"A traffic violation, no matter how minor, creates probable cause for a law enforcement officer to stop [a] vehicle." *United States v. Lopez*, 564 F.3d 1001, 1003 (8th Cir. 2009). "[I]f an officer has reasonable suspicion or probable cause to stop for a traffic violation, 'any ulterior motivation on the officer's part is irrelevant.'" *United States v. McLemore*, 887 F.3d 861, 864 (8th Cir. 2018) (quoting *United States v. Fuehrer*, 844 F.3d 767, 772 (8th Cir. 2016), *cert. denied*, 137 S. Ct. 2107 (2017). "Reasonable suspicion is 'a particularized and objective basis for suspecting the particular person stopped of breaking the law.'" *Id.* (quoting *Heien v. North Carolina*, 574 U.S. 54, 60 (2014)).

Defendant generally disputes whether the traffic stop was justified at its inception. He argues the video only shows Defendant driving in a proper and cautious manner. However, video evidence of a traffic infraction is not a required to initiate a stop. At the hearing, the officers testified they initiated the stop because they observed the Durango make an improper lane change. The Court finds the officers' testimony credible as to the traffic infraction. Accordingly, officers had an objective basis to initiate the stop.

3

### B.   Consent to Search Defendant's Pockets

The Fourth Amendment demands that people shall "be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, . . . and no Warrants shall issue, but upon probable cause. . . ." U.S. Const., amend. IV. "The Fourth Amendment 'is not triggered by a consensual encounter between an officer and a private citizen.'" *United States v. Aquino*, 674 F.3d 918, 923 (8th Cir. 2012) (quoting *United States v. Villa–Gonzalez,* 623 F.3d 526, 531 (8th Cir. 2010)). "[T]he determination of whether a reasonable officer would believe that [a defendant] consented is a question of fact, subject to review for clear error." *United States v. Quintero-Felix*, 714 F.3d 563, 568 (8th Cir. 2013) (quoting *United States v. Guerrero,* 374 F.3d 584, 588 (8th Cir. 2004)).

Eighth Circuit case law offers a "catalogue of factors" courts can consider in judging whether the defendant's consent to search was voluntary. *United States v. Willie,* 462 F.3d 892, 896 (8th Cir. 2006). Some factors "relate to the defendant's characteristics and behavior, including the defendant's "age, intelligence and education, knowledge of his constitutional rights (whether from *Miranda* warnings in the encounter at issue or from previous interactions with police), whether he was under the influence of drugs or alcohol, and whether he objected to the search or stood by silently as it was occurring." *Id.* Other factors relate to the Defendant's environment at the time he gave his consent. *Id.* These factors include whether he was in custody or under arrest or whether he was in a public or secluded place. *Id.* The last group of factors relate to the defendant's interaction with police and include "whether police officers detained and questioned the defendant for a long time before obtaining his consent, whether they threatened, physically intimidated, or punished him, and whether they made promises or misrepresentations upon which the defendant relied in giving his consent." *Id.* "No one factor is dispositive; they are merely

4

tools for analyzing the 'totality of all the circumstances.'" *Id.* (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973)).

Defendant's own characteristics show his consent was voluntary. Defendant was an adult and conversed easily with officers prior to the search. He appeared to be at least of average intelligence. Defendant's answers to the officer's questions and his overall demeanor showed he understood what was happening and what was being asked. The record also shows Defendant was no stranger to law enforcement and would have been aware of his rights. Further, although officers suspected that Defendant was driving under the influence, the video did not indicate that Defendant was impaired or unable to understand the circumstances. Finally, Defendant appeared to comply with the officer's request to search and at no point objected or withdrew his consent even as officers searched his pockets. *United States v. Sanders*, 424 F.3d 768, 774 (8th Cir. 2005) ("Conduct withdrawing consent must be an act clearly inconsistent with the apparent consent to search, an unambiguous statement challenging the officer's authority to conduct the search, or some combination of both.") (internal quotations omitted).

Defendant's environment and his interaction with officers also suggest consent to search was voluntary. Although the interaction took place late at night, it was in a public place, and there was no indication that Defendant was intimidated. He was not under arrest at the time officers requested permission to search, and at the point they requested consent, the interaction had lasted less than three minutes. In their short interaction, officers were cordial and had not threatened or attempted to coerce Defendant in any way. Accordingly, under the totality of the circumstances, Defendant's consent to search was voluntarily given.

The Court recognizes that Officer Orsi's request, viewed in isolation, was somewhat ambiguous. However, an officer's request for consent must be viewed in the totality of the circumstances. *United States v. Gastelum*, 11 F.4th 898, 904 (8th Cir. 2021). The facts in *Gastelum* are instructive in this case. In *Gastelum*, after completing a traffic stop and issuing a warning ticket, a state trooper asked the defendant whether he had any luggage in the trunk of the vehicle. *Id.* at 901. The defendant responded that he did and the trooper replied, "Quick check of that and then we'll be done. Alright, come on out for me and pop that trunk on your way out." *Id.* While attempting to comply, the defendant fumbled for the trunk release. *Id.* As the defendant struggled with the release and before the trunk opened, the trooper asked, "You don't mind if I look back there, do you? You don't care, huh? That's fine?" *Id.* The defendant and agreed opened the trunk, where the trooper found a duffle bag with a large quantity of cocaine. *Id.*

The Eighth Circuit concluded that although the trooper's initial statement was "problematic" because it was a directive, the trooper corrected himself and asked for consent. *Id.* at 904. More importantly, the video of the stop showed the environment was "friendly and relaxed" and the conversation between the defendant and the trooper was "cordial" for the entirety of the stop. *Id.* The Court noted that the trooper was understated, unauthoritative, and polite. *Id.* "The encounter was demonstrably free of threats, physical intimidation, and punishment." *Id.* (citations and quotations omitted). Moreover, the defendant was not under arrest, was of average intelligence, and never objected to the search but "stood by silently" after the trooper opened the trunk. *Id.* at 905 (citations omitted). Thus, under the totality of the circumstances, the defendant's consent was voluntary. *Id.*

6

For similar reasons, Officer Orsi's ambiguous question did not nullify Defendant's consent. Just before Orsi asked for consent, the video shows Defendant briefly reached for his pocket. Orsi then instructs Defendant to keep his hands out of his pockets and asks if Defendant has anything on him that Orsi should know about. After Defendant's denial, Orsi then asked, "Care if I check you to be sure?" Unlike the problematic statements in Gastelum, Orsi asked for consent. Orsi's request was an immediate follow up to his question about whether Defendant had anything on him that Orsi should be aware of. Given this context, an objective officer could conclude that Orsi had reasonably asked for consent to search Defendant's pockets. Moreover, just as in *Gastelum*, the entire interaction—though much shorter—by the *Gastelum* standard, could be characterized as cordial and relaxed. Officer Orsi was generally polite, there were no threats, and Defendant appeared to know what was happening and did not object. Accordingly, under the totality of the circumstances, Orsi's ambiguous question did not nullify Defendant's consent.

### III. CONCLUSION

For the reasons discussed, the initial stop was valid and Defendant voluntary consented to the search. Accordingly, evidence obtained was not fruit of the poisonous tree and the Motion to Suppress must be denied.

IT IS ORDERED: Defendant's Motion to Suppress (Filing No. 61), is denied.

Dated this 29th day of December, 2021.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge